

Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 11/19/12

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

IN RE:                                    )
                                          )
KABINE OUDOMSOUK and                      )          Case No. 11-02990
TIENGKHAN OUDOMSOUK,                      )          Chapter 13
     Debtors.                            )          Hon. Randal S. Mashburn
                                          )
KABINE OUDOMSOUK,                         )
TIENGKHAN OUDOMSOUK                        )
     Plaintiffs,                         )
                                          )
v.                                        )          Adv. No. 12-90319
                                          )
BANK OF AMERICA, N.A, SUCCESOR BY         )
MERGER TO BAC HOME LOANS SERVICING )
LP, FORMERLY KNOWN AS COUNTRYWIDE )
HOME LOANS SERVICING, L.P.                )
     Defendants.[1]                      )

## MEMORANDUM OPINION

     The parties in this adversary proceeding have stipulated their way into an artificial fact scenario that tests the judicial process. They have posed this question: what should be done with the underlying lien when a secured claim is disallowed pursuant to a default process even though it is now undisputed that the secured lender has an otherwise completely valid, enforceable, and unavoidable lien?

---

[1] An Amicus Curiae Brief was filed by Henry E. Hildebrand III, the standing Chapter 13 Trustee for the Middle District of Tennessee.

1

The Debtors and Chapter 13 Trustee assert that disallowance of the secured claim is a sufficient basis to void the lien itself pursuant to 11 U.S.C. § 506(b) — notwithstanding the questionable process used to get there and despite the fact that disallowance was not based on the merits. At the other end of the spectrum, the secured lender contends that it can totally ignore the entire bankruptcy process, including the claim disallowance procedures, and have its lien survive bankruptcy unscathed.

Because the artificial scenario constructed by the parties is an inappropriate vehicle for any far-reaching ruling that the parties appear to desire, the Court will no doubt disappoint everyone with a narrow result geared to these limited facts.

## I. NATURE OF PROCEEDINGS

Kabine and Tiengkhan Oudomsouk ("Debtors") filed an adversary proceeding against Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, L.P., formerly known as Countrywide Home Loans Servicing L.P. ("BOA") seeking to avoid BOA's home mortgage lien. BOA filed a counter-complaint asking that the home mortgage debt be declared nondischargeable. The proceeding was heard on cross motions for summary judgment. The following constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

This matter reached the Court by a combination of peculiar positions by the parties — positions taken, the Court suspects, partially out of a desire to pry some hard-and-fast rules or guidelines out of this Court to address the unfortunately common situation where a secured creditor fails or declines to participate in a Chapter 13 case.

The parties' positions can be summarized as follows:

Case 3:12-ap-90319   Doc 25   Filed 11/19/12   Entered 11/19/12 15:38:29   Desc Main
Document      Page 2 of 21

1.  The combined efforts of the Debtors and Chapter 13 Trustee resulted in disallowance of the claim of BOA based on the proposition that insufficient proof was produced that BOA was the holder of the secured claim and the proper party to be paid in the Chapter 13 plan. However, after successfully having the claim disallowed on that basis in a prior contested matter, the Debtors and Trustee apparently became absolutely confident — for purposes of this adversary proceeding — that BOA was, in fact, the actual holder of the secured lien. In short, their joint efforts reflected a real or feigned concern about the identity of the holder of the secured claim for claim allowance purposes but no concern whatsoever about the identity of the lien holder for avoidance purposes.

2.  BOA, apparently because it covets a concrete rule that it has no obligation to be involved in any claim allowance process in the future in this district, has collaborated with the Debtors to focus this litigation on the difficult interaction between claim disallowance and lien voidance rather than doing the obvious – directly asking the Court to set aside the order disallowing its admittedly valid claim. A simple motion by BOA to reconsider disallowance would logically occur now in light of the stipulation that BOA is indeed the holder of the lien, and that there are no grounds for attack on the lien other than the claim disallowance that occurred by default.

The Court must first sort through the interaction of sections 501(c), 502(b) and 506(d) of the Bankruptcy Code as impacted by the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), particularly as interpreted by circuit court opinions arising in the claim allowance process. However, the ultimate decision here is based on the Court's unwillingness to countenance irreconcilable legal results arising out of separate proceedings over plan confirmation, claim allowance, and lien avoidance in this artificial context.

## II. FACTS

All of the facts pertinent to this matter were stipulated in writing in advance of the summary judgment hearing, were acknowledged by counsel on the record during the hearing itself, or are otherwise undisputed.

The Debtors filed their Chapter 13 bankruptcy petition on March 24, 2011. In their schedules, the Debtors listed "BAC Home Loans Servicing" (now stipulated to be BOA) as a

3

secured creditor holding a mortgage on property located at 148 Adams Lane, Bell Buckle, TN 37020. The Debtors scheduled the amount of BOA's secured claim as $76,076.00, with a continuing monthly payment of $551.00. The debt was not listed as contingent, unliquidated, or disputed. The debt owed to BOA is reflected in a promissory note and secured by a deed of trust on the Debtors' Bell Buckle property, which is their primary residence and is the only collateral securing the debt to BOA. BOA did not file a proof of claim.

On April 28, 2011, this Court entered an order confirming the Debtors' Chapter 13 plan. The confirmation order identifies BOA as the holder of a "'long term' debt provided for under [11] U.S.C. §1322(b)(5)" with respect to the mortgage on the Debtors' residence. The Chapter 13 plan provided for mortgage payments to BOA although it also included language that the terms of the plan remained subject to the claim allowance process.

On August 1, 2011, the Debtors' counsel filed proofs of claim nos. 12 and 13 on behalf of BOA.[2] Proof of claim #12 listed the total debt owed to BOA as "RMP: $551.00" apparently to reflect the regular monthly payment.[3] Proof of claim #13 listed a figure of $18,500.00 without indicating if it was the payoff balance, arrearage, or other type of fees and costs, although it apparently reflected the arrearage only. Neither proof of claim reflected a loan number or any

---

[2] The Proofs of Claim were filed in the name of "BAC Home Loans Servicing," but the parties have raised no issues about any distinctions between BOA and BAC Home Loans Servicing. Indeed, the stipulations reflect that everyone is now in agreement that BOA is the secured lender and the proper party for purposes of the claim allowance process and the adversary proceeding.

[3] The proof of claim states:

> Real estate mortgage holders should file two claims: one claim should include only arrearage, late fees, attorneys fees and foreclosure costs incurred through date of filing of the debtor's bankruptcy petition; a separate claim should reflect the payoff balance, the regular monthly payment and applicable interest rate.

Neither proof of claim reflected a payoff balance.

4

information that would allow a creditor to link the proof of claim to a particular debt. Neither listed the principal amount of the debt, and there was no supporting documentation whatsoever with either claim. (Although technically two separate documents, the two proofs of claim filed by the Debtors on behalf of BOA will sometimes be referred to herein in the singular.)

In filing the proof of claim on behalf of BOA, the Debtors failed to include a variety of information that was obviously readily available – information appearing elsewhere in their bankruptcy filings. For example, the proof of claim did not provide any information about the total amount of the debt to BOA even though $76,076.00 was shown on both Schedule A listing real estate and Schedule D identifying secured debt. The proof of claim did not identify the collateral subject to the lien of BOA even though the property was identified by street address on both Schedule A and Schedule D. The proof of claim did not reference any account number even though that information was also shown in the bankruptcy filings.

The proof of claim filed by the Debtors checked the box marked "secured," but did not include loan or lien documentation of any type. Aside from any issue about documents or information possessed by the Debtors or accessible to them, the Debtors did not include any type of declaration or statement corroborating what was shown elsewhere in their bankruptcy filings – that their residence served as the sole collateral for the BOA debt.

Faced with a purported secured proof of claim that did not even identify the collateral or provide the principal amount of the debt, the Chapter 13 Trustee objected to the proof of claim. The grounds stated were: (1) the collateral securing the debt is not identified; (2) the mortgage or deed of trust is not included with the proof of claim; (3) the note does not

accompany the proof of claim; (4) the mortgage and/or the note does not contain information reflecting a perfected security interest; and (5) the name of the creditor on the face of the proof of claim is not supported by the documents attached. In essence, the Chapter 13 Trustee objected to the claim because there was no lien or loan documentation and no information tying BOA to the collateral. Neither the Debtors nor BOA responded to the Trustee's objection.

Disallowance in this case arose purely through a negative notice procedure that results in an actual hearing on the merits only if a party responds in some manner. Here the Debtors filed claims on behalf of BOA that had obvious and fatal flaws; the Trustee predictably objected to the claim as he does in virtually all situations where not even the most basic and available information is included with the proof of claim, and both BOA and the Debtors then declined to take action. With no response to the objection, there was no need for a hearing, and an order disallowing the Debtors' claim on behalf of BOA was entered on October 5, 2011.[4] It is the combination of the failure of BOA to become a participant in the process and the unwillingness of the Debtors to make a serious effort to have the claim allowed that ultimately created the problem currently before the Court.

After disallowance of the proof of claim, some funds otherwise earmarked for distribution to BOA were distributed to other creditors. However, on January 9, 2012, the Trustee and the Debtors entered into an agreed order that temporarily placed a hold on funds that would have been payable to BOA under the confirmed plan had an allowed claim been filed, pending resolution of this adversary proceeding.

---

[4] Although technically there are two separate orders, denying claims 12 and 13, the Court will refer to the orders herein in the singular.

Case 3:12-ap-90319   Doc 25   Filed 11/19/12   Entered 11/19/12 15:38:29   Desc Main
Document      Page 6 of 21

On June 16, 2012, the Debtors filed this adversary proceeding against BOA and alleged that, because the claim had been disallowed, the lien should be void, citing 11 U.S.C. § 506(d). That statute provides that a lien securing a claim against a Debtor "that is not an allowed secured claim" is "void" except in limited circumstances. In short, the Debtors contend that disallowance of the BOA proofs of claim alone is sufficient to void the lien under § 506(d). As the case developed, it became clear that the Debtors were arguing that the lien should be void even when the underlying lien is otherwise valid and enforceable. BOA, of course, asks this court to reach the opposite conclusion — that its lien survives without its participation in the bankruptcy proceedings.

## III. DISCUSSION
### A. The Claim Disallowance Process Generally

Section 501(a) provides that a creditor "may file a proof of claim." If a creditor elects not to file a proof of claim, § 501(c) and Fed. R. Bankr. P 3004 allows the Debtor or Trustee to file a proof of claim on behalf of the creditor.[5] "A claim or interest, proof of which is filed under

---

[5] 11 U.S.C. 501(c) provides:

> If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The legislative history of § 501(c) states:

> The purpose of this subsection is mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

S.Rep. No. 95–989, at 61 (1978); H.R.Rep. No. 95–595, at 352 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5847, 6307–08. The 2005 Advisory Committee Note to Rule 3004 states that "[p]roviding the debtor and the trustee with the opportunity to file a claim ensures that the claim will participate in any distribution in the case."

section 501 of [Title 11], is deemed allowed, unless a party in interest ... objects." *11 U.S.C. §*
*502(a)*.

Fed. R. Bankr. P. 3001(f) states: "[a] proof of claim executed and filed in accordance with
these rules shall constitute prima facie evidence of the validity and amount of the claim." *Fed.*
*R. Bankr. P. 3001(f)*. Thus, a proof of claim is presumed a valid liability of the debtor unless an
interested party objects. *In re Dow Corning Corp.*, 456 F.3d 668, 680 (6th Cir. 2006). In the event
of an objection, the objecting party must present evidence rebutting the proof of claim by
refuting at least one allegation that is essential to the legal sufficiency of the claim, after which
the burden of proof shifts to the claimant to prove the claim's validity by a preponderance of
the evidence. *Id.*; *In re Cleveland,* 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (citation omitted).

If a secured creditor elects not to file a proof of claim, and no proof of claim is filed on
the creditor's behalf by the Debtor or the Trustee, then normally that lack of a proof of claim
will not adversely affect the lien rights, at least assuming modification of the lien does not occur
as a result of the plan process in a Chapter 11 or Chapter 13 and outside the claim allowance
process:

> [T]he failure of a secured creditor to file a proof of claim will not result in the loss
> of the creditor's lien and generally speaking, after the bankruptcy case is
> concluded, the creditor may pursue the collateral to satisfy its lien, *Estate of
> Lellock v. Prudential Ins. Co. of America,* 811 F.2d 186, 187–88 (3d Cir.1987);
> *Tarnow,* 749 F.2d at 465–67; *Matter of Baldridge,* 232 B.R. 394, 395–96 (Bankr.
> N.D.Ind. 1999); *Bisch [v. U.S.],* 159 B.R. [546] at 548–50 [(9th Cir. BAP 1993)].

*In re Kessler,* 252 B.R. 632, 633 (Bankr. E.D. Pa. 2000); *see also In re Hamlett*, 322 F.3d 342, 349
(4th Cir. 2003) (holding creditor who stays aloof from bankruptcy by not filing a proof of claim
retains its lien under § 506(d)); *In re Shelton*, 477 B.R. 749, 752 (8th Cir. BAP 2012) (citing
*Hamlett* and ruling a secured creditor's lien cannot be avoided under § 506(d) for untimeliness).

8

A quite different process can arise when the Debtor or Trustee files a proof of claim on behalf of a creditor and that claim then becomes the subject of an objection. In that situation, the creditor can be forced into a contested matter under certain circumstances.[6] Failure to respond to the contested matter may have significant consequences for the secured creditor.[7] As noted by the United States Court of Appeals for the Seventh Circuit in *Matter of Lindsey,* 823 F.2d 189 (7th Cir. 1987), the process "not only drags the secured creditor into the bankruptcy proceeding against his will" but can result in limitations on lien rights, such as, in that case, lowering the required value for redemption purposes. *Id.* at 191.

In the present case, the Debtors did in fact file a proof of claim on behalf of BOA – albeit a facially defective one. As noted previously, the Trustee's objection to the bare bones proof of

---

[6] "Filing a claim on behalf of a secured creditor is one sure way to start the claims allowance process." Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4th Edition*, § 286.1, at ¶19 Sec. Rev. Jan. 19, 2010, www.Ch13online.com. *See also, In re S. White Transp., Inc.,* 473 B.R. 695, 702 (Bankr. S.D. Miss. 2012) ("Had SWT wished to conclusively resolve the question of the validity of the lien within the bankruptcy after Acceptance failed to file a proof of claim, it could have brought Acceptance into the fray by filing a proof of claim on behalf of Acceptance and initiating an adversary proceeding. 11 U.S.C. § 501(c); Fed. R. Bankr.P. 7001."); *In re Jurado*, 318 B.R. 251 (Bankr. D. P.R. 2004) (noting that secured creditor is entitled to ignore the bankruptcy proceedings altogether and look to its lien for the satisfaction of the debt, but it behooves the Debtor to protect its right to pay the secured debt under section 1325(a)(5) of the Code by filing a timely proof of claim on behalf of the secured creditor.)

> The practice of filing proofs of claim on behalf of creditors in Chapter 13 cases is routine in some districts and unheard of in others. For example, in jurisdictions where it is common for Chapter 13 Debtors to make payments on home mortgages through the Trustee, to ensure that mortgage payments begin immediately upon confirmation, the Debtor or the Trustee may file a proof of claim on behalf of the mortgage holder. This makes a lot of sense—the Debtor desires to keep the home, the lien may survive even if the creditor fails to file a proof of claim.

*Lundin and Brown,* at ¶1.

[7] *See* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4th Edition*, § 286.1, at ¶ 28, Sec. Rev. Jan. 19, 2010, www.Ch13online.com. (*citing In re Macias*, 195 B.R. 659, 662 n.5, 663 (Bankr. W.D. Tex. 1996) ("If a secured claim is untimely filed, the Trustee is entitled (perhaps even obligated) to object to its filing as untimely. Such disallowed claims will not be entitled to any distribution under the plan, nor will the creditor's failure to timely file permit the [creditor] to later argue a lack of adequate protection." [ ] "[A] secured creditor cannot simply absent itself from the bankruptcy process in chapter 13, then hope to obtain easy relief from the automatic stay after confirmation. Such a creditor could hardly maintain that cause existed for relief from stay where the Debtor had made provision for the creditor in the plan and only the creditor's refusal to file a claim prevented it from receiving the adequate protection that had been offered.").

Case 3:12-ap-90319   Doc 25   Filed 11/19/12   Entered 11/19/12 15:38:29   Desc Main
Document      Page 9 of 21

claim drew no response from BOA, and BOA does not contend it was improperly served. It has provided no explanation for the failure to timely respond. Once the order was entered disallowing the claims, BOA continued its passive posture, taking no action to undo the disallowance or appeal the result. BOA simply chose to "sit out" this bankruptcy.

### B. Lien Avoidance

Disallowance of BOA's claim opened the door for the Debtors to pursue an action under § 506(d), which provides in relevant part:

> (d) To the extent that a lien secures a claim against the Debtor that is not an allowed secured claim, such lien is void, unless—
>
> (1)    such claim was disallowed only under section 502 (b)(5) or 502 (e) of this title; or
>
> (2)    such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

*11 U.S.C. § 506(d).*

Arguably, BOA becomes a victim of the conspiracy of sections 501(c) and 506(d)(2). The initial proposition is that a creditor wishing to "sit out" a bankruptcy proceeding and not file a proof of claim is completely protected by § 506(d)(2). However, BOA was essentially hauled into court by the Debtors' filing of the proof of claim on BOA's behalf and the Trustee's objection to the clearly deficient claim. Does § 506(d)(2) then void BOA's lien as the ultimate sanction for BOA's failure to respond to the objection to the debtor-filed proof of claim as well as its failure to withdraw the claim, amend the claim, seek reconsideration of the disallowance, or to appeal the order?

On the surface § 506(d)(2) creates a trap for secured creditors that fail to respond or otherwise join in the bankruptcy upon objection to their claim. Section 506(d)(2) declares that if BOA's claim is not allowed, BOA's lien is void, unless the only reason the claim was disallowed is due to the failure of "any entity" to file a proof of claim. Entity is a defined term in the Bankruptcy Code, and "includes persons, estate, trust, governmental unit, and United States Trustees." *11 U.S.C. § 101(15)*. "Any" means "without restriction." *Merriam-Webster.com (2012)*. The legislative history of § 506(d) indicates that:

> Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

*House Report No. 95-595, 95th Cong., 1st Sess. 1977, 1978 U.S.C.C.A.N. 5963, 1977 WL 9628.*

BOA contends that because of the defective nature of the claim and the procedure used to disallow it, the Court should treat the matter as if no claim was actually filed, thereby fitting within an exception to § 506(d). Based on the plain definition, an "entity" filed a proof of claim in this case. There are issues with the filing of the proof of claim and the disallowance process, but this Court cannot dispense with the problem merely by pretending no claim was filed.

### C.  Limitations Under *Dewsnup*

The failure of either the Debtors or BOA to respond to the Trustee's objection left BOA's lien at extreme peril.  The language in sections 501(c), 502(b), and 506(d) appears to combine not only to force BOA into court, but to void its lien for failure to defend the deficient proofs of claim filed by the Debtors on BOA's behalf.  But how can BOA have the right to "sit out" and allow its lien to ride through bankruptcy unscathed under *Dewsnup*, but at the same time be

required to participate in a bankruptcy proceeding in order to escape lien avoidance under §506(d)(2)?

The Fourth Circuit (*In re Hamlett*, 322 F.3d 342 (4th Cir. 2003)) and Seventh Circuit (*In re Tarnow,* 749 F.2d 464, 466 (7th Cir. 1984)) addressed this tension, albeit under slightly different facts. In *Hamlett,* AmSouth Bank filed seven proofs of claim regarding its secured interests in the Debtor's property, and the claims were objected to and disallowed as untimely. The Debtor then filed an adversary proceeding seeking to avoid AmSouth's lien pursuant to 11 U.S.C. § 506(d) based on the disallowed, untimely claims. The Fourth Circuit adopted the Seventh Circuit's reasoning in *In re Tarnow,* 749 F.2d 464 (7th Cir. 1984), agreeing that "§ 506(d) only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be *invalid in substance*." *Hamlett*, 322 F.3d at 348 (emphasis added).

*Hamlett* provides a good discussion of the rationale of *Tarnow* and the clash between §506(d)(2) and the long-standing jurisprudence that a secured creditor's lien passes through bankruptcy. "More than a century ago, the Supreme Court held that a bankruptcy discharge of a secured creditor's claim does not affect the status of the creditor's underlying lien on the Debtors' property." *In re Hamlett* at 347 *(citing Long v. Bullard,* 117 U.S. 617, 620-21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) (holding "[h]ere the creditor neither proved his debt in bankruptcy nor released his lien. Consequently his security was preserved notwithstanding the bankruptcy of this debtor.")).

When the Bankruptcy Act was reformed in 1978, some questioned whether the "liens pass through" principle survived. In 1992, however, the Supreme Court concluded in *Dewsnup* that it was "not convinced that Congress intended to depart from the pre-Code rule that liens

pass through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 417, (1992). *Hamlett* at

348. Over a strong dissent relying on the "plain language" of the Code, the majority in *Dewsnup*

held that "under the new Code, as before, the creditor's lien stays with the real property until

the foreclosure" reasoning that a creditor who stays aloof from bankruptcy should not be

better protected than one who participates voluntarily. *Hamlett* at 348 (citing *Dewsnup*). *See*

*also In re Tarnow*, 749 F.2d 464, 466 (7th Cir. 1984) (pre-*Dewsnup* case finding that although

"read literally" § 506(d) seemed to support avoiding mortgage lender's lien based on disallowed

late-filed claim, rule "permitting liens to pass through bankruptcy unaffected" supported the

conclusion that the "intended meaning" of 506(d) is "to allow the bankruptcy court to

determine whether a creditor has a valid secured claim, and if he does not to make the lien -

the security - fall with the claim.").

   Thus, the Fourth Circuit and the Seventh Circuit have concluded that "§ 506(d) only

empowers the bankruptcy court to void liens supporting disallowed claims if it judges those

liens to be invalid in substance." *Hamlett*, at 348.  "The failure to file a timely claim, like the

failure to file a claim at all, does not constitute sufficient grounds for extinguishing a perfectly

valid lien." *Id.* at 349. The Fourth Circuit found that the voiding of a lien was a

"disproportionately severe" sanction for an untimely filed, disallowed proof of claim.  The Court

explained that the sanction for an untimely lawsuit is dismissal under the statute of limitations,

not taking away property. "And a lien is property." *Id.* at 349 (quoting *Tarnow*, 749 F.2d at 465-

66).  Ultimately, the *Hamlett* Court concluded that:

>      Accepting [the Debtor's] argument would mean that although a lien
> remains intact despite a creditor's total failure to file a claim, a lien would be
> extinguished whenever a creditor filed a valid claim after the bar date; i.e.,
> attempted compliance with the Bankruptcy Code's procedure for filing a claim

would place an underlying lien at risk, while complete refusal to participate in the bankruptcy proceedings does not.  Given the Supreme Court's holding in *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773, that "liens pass through bankruptcy unaffected," even if § 506(d)(2) could be read to require the result [the Debtor] seeks, adopting that interpretation would produce "a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

*Hamlett* at 350.

A similar analysis was used by the Eighth Circuit in *In re Be-Mac Transport Co., Inc.,* 83 F.3d 1020 (8th Cir. 1996) (citing *Tarnow* with approval). The Eighth Circuit held that the lateness of an amendment to a claim, correcting the previously filed claim's incorrect designation as an unsecured claim, is not a sufficient ground, by itself, to invalidate the lien securing that claim. Again, though technically the language of § 506(d) was satisfied because the lien was "not an allowed secured claim" due to the initial incorrect characterization and untimely amendment, the court found lien avoidance to be improper in light of *Dewsnup* when there was no attack on the merits. *Id*. at 1026-27.

The reasoning of *Hamlett, Tarnow* and *Be-Mac Transport,* if adopted by the Sixth Circuit, would create a significant impediment to the result sought by the Debtors and Trustee. Those cases all involved situations where the creditor filed a late or defective claim, and those circuits concluded that this should not be a basis for voiding a lien when the disallowance of the respective claims was not on the merits – that is, as those courts said, the disallowance was not based on a determination of the validity of the claims "in substance."

The situation in this case involves a defective claim filed by the Debtors rather than the creditor but the rationale from the *Hamlett, Tarnow* and *Be-Mac Transport* cases could apply

Case 3:12-ap-90319    Doc 25    Filed 11/19/12    Entered 11/19/12 15:38:29    Desc Main
Document      Page 14 of 21

just as easily since there was no finding on the merits and the disallowance of BOA's claim was purely through a default process with no proof or court determination about the claim "in substance." Certainly, the rationale used by the Fourth, Seventh and Eighth Circuits reflects an effort to follow the *Dewsnup* approach and to temper the express language of certain Bankruptcy Code provisions with the fundamental policies underlying the *Dewsnup* decision. There is a strong argument for attempting to reach that same balance between the policies required to protect a secured creditor who chooses to stay out of bankruptcy and a Debtor seeking to have a home mortgage handled through a Chapter 13 plan even when the secured creditor is not cooperating in the claims process.

In many cases, it makes sense for a debtor to have the secured creditor paid in the Chapter 13 plan and to take steps to assure that this occurs. A debtor might start this process by filing a proof of claim on behalf of a creditor pursuant to 11 U.S.C. § 501(c), as occurred here. Can the Debtors' filing of a facially flawed proof of claim on behalf of the secured creditor create a totally different result from the situations described in *Hamlett, Tarnow* and *Be-Mac Transport*? If a creditor who misses a deadline and has a claim disallowed on that basis alone cannot be penalized to the extent of voiding its lien, then should a creditor have its lien voided merely because a debtor chooses to file a facially defective claim on the creditor's behalf?

*Dewsnup*, as interpreted by *Hamlett* and *Be-Mac Transport*, would seem to prevent what the Debtors and Chapter 13 Trustee seek here — a voided lien based on a claim that was disallowed on the Debtors' deficient § 501(c) proof of claim where the claim was not challenged "in substance." However, perhaps to the chagrin of the parties, it is not necessary to reach a definitive determination on that interesting issue because of the manner in which this case has

15

Case 3:12-ap-90319   Doc 25   Filed 11/19/12   Entered 11/19/12 15:38:29   Desc Main
                     Document      Page 15 of 21

been presented to the Court. Indeed, it is unclear whether this precise issue should ever arise except in artificial circumstances.

### D. Unusual Circumstances

In this case, the Debtors' challenge under § 506(d) arises from the failure of BOA to demonstrate that it had a secured claim in response to the Trustee's objection to the claim filed by the Debtors.  Now the Debtors stipulate that BOA does, in fact, have an otherwise valid and enforceable lien. There is no attack here of the traditional type tied to existence, legitimacy, perfection, priority or extent of a lien.  *See In re Hunter,* 466 B.R. 439, 447 (Bankr. E.D. Tenn. 2012), (Judge Stair discussing the distinction between a typical adversarial challenge to a creditor's lien compared to a mere determination of a party's standing to enforce such lien). There is a disallowed claim but the underlying lien is not alleged to be "invalid in substance" within the meaning of *Tarnow, Hamlett* and *Be-Mac Transport*.

Some bankruptcy districts have consolidated the process of Chapter 13 plan confirmation and claim allowance. In some districts it would be virtually impossible to have a confirmation order that provides for classification and payment of a secured debt and a separate claim allowance process that could trump the terms of the plan as it relates to that secured debt.  In this district, for good or bad, the Chapter 13 plan process and the negative notice procedures that apply to claim allowance and lien voidance can proceed on separate tracks.  This process can result in potentially varying results as it relates to plan treatment, claim allowance and lien voidance. Normally, any incongruity would not be as stark as it is here where the parties have stipulated that the process resulted in an otherwise valid and enforceable claim being disallowed by default after being initiated by the defective claim filed by the

16

Debtors on behalf of BOA.[8] What makes this fact scenario so contrived is that the lien avoidance issue would not be before this Court if either the Debtors or BOA had taken action under § 502(j) to have the claim disallowance reconsidered once it was obvious there was no substantive attack on the lien.

It is not uncommon for a debtor to use the claim by proxy mechanism under § 501(c) to thrust the secured lender into the bankruptcy case. After all, most secured creditors presumably want to get paid and will eventually respond. Odd posturing by the parties converged here. First, the Debtors' efforts were abnormally constrained – with no effort to include minimal information already available in the bankruptcy filings,[9] no effort to pursue other potentially available information,[10] and no effort to respond to the Trustee's objection to the claim. Second, BOA failed to take advantage of the many avenues available to fix the problem. Once its claim was objected to, BOA clearly possessed the knowledge and capability to provide supporting documentation to the proof of claim or otherwise respond to the Trustee's objection. In fact, BOA attached the Note and Deed of Trust to its Amended Answer in this adversary proceeding — so the documents were clearly available. BOA could have sought

---

[8] The frustration of debtors' attorneys in dealing with creditors such as BOA is quite understandable. In recent times this Court has seen many cases where there has been confusion about the identity of the holders of notes, how assignments are carried out, whether lenders have been properly served, and other similar problems arising over mortgage litigation and contested matters.

[9] As noted earlier, information in the Debtors' petition was omitted from the proof of claim so that the proof of claim did not even identify the collateral, the principal amount of the debt, or link the debt to a loan number.

[10] In light of the Court's ultimate ruling in this case, it is beyond the scope of this opinion to resolve precisely what legal obligations a debtor may have in conjunction with the filing of a claim under section 501(c) on behalf of a creditor. However, from a pure practical standpoint, it is worth noting that tools are available to assist a debtor whose primary goal is to try to identify a secured creditor and provide for payments in a Chapter 13 plan. For example, there is an entire federal non-bankruptcy statutory scheme available to consumer debtors to obtain documents and information about their mortgage loans. Normally, the debtor knows where payments have been sent in the past, and this will typically provide a basis to make a "Qualified Written Request" under the Real Estate Settlement Procedures Act. 12 U.S.C. § 2601, et seq.

Case 3:12-ap-90319   Doc 25   Filed 11/19/12   Entered 11/19/12 15:38:29   Desc Main
Document     Page 17 of 21

withdrawal of the proof of claim pursuant to Fed. R. Bankr. P. 3006; it could have sought to amend the claim, or could have provided the information to the Debtors to amend; it could have shown proof of perfection to the Trustee prior to the claim being disallowed; and, of course, it could have asked for reconsideration before the Debtors filed this adversary proceeding. BOA chose to do absolutely nothing other than defend the adversary proceeding in a manner slanted toward inviting legal precedent rather than focusing on payment of the debt owed by these Debtors.

Simply put, this is not your typical § 506(d) case. Section 506(d) is certainly available to address real problems. It can be used to void a lien if there is an actual issue – such as a lack of a signature, a forgery, a flawed acknowledgement, an improper property description, a recording mistake or a host of other concerns. There are numerous grounds to object to the allowance of a claim and then to seek to void the lien – or to go directly to the lien avoidance issue by first filing suit under § 506(d). If there were an actual issue about the validity of a lien, then presumably the Debtors or the Trustee would mount a straightforward attack – by alleging that the lien was defective in some material way. In that situation, *Dewsnup* concerns are limited or nonexistent because the attack is, in the words of *Hamlett, Tarnow* and *Be-Mac Transport*, about validity "in substance."

In this case, the parties have stipulated that an otherwise valid claim has been disallowed on grounds that have nothing to do with the substance of the claim or lien. This Court is obligated to address that problem, and in the end, that means reconsideration of the disallowed claim.

## E. 502(j) - Claim Reconsideration

Section 502(j) provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

*11 U.S.C. § 502(j).* Reconsideration of a claim is discretionary. *In re Adkins*, 425 F.3d 296, 308 (6th Cir. 2005); *In re Mathiason*, 16 F.3d 234, 239 (8th Cir. 1994); *Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) ("[t]he bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved. If reconsideration is granted, the court may readjust the claim in any fashion 'according to the equities of the case.'")**;** *see also, Fed. R. Bankr. P. 3008, Advisory Committee Note (1983)* ("Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."). "The court's broad remedial powers extend to deciding the procedure necessary to invoke them; the court need not wait for a formal motion and may reconsider a claim sua sponte." *In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999).

Most courts agree that the standard for reconsideration of a claim under § 502(j) that was *actually litigated* is consistent with Fed. R. Civ. P. 60(b), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024. *See, In the Matter of Colley,* 814 F.2d 1008, 1010 (5th Cir. 1987), *reh'g denied, cert. denied, 484 U.S. 898 (1987).* The standard is possibly less stringent when the matter has not been litigated, for example, under a negative notice default order. *See In re Jack Kline Co., Inc.,* 440 B.R. 712 (Bankr S.D. Tex. 2010 (holding if parties have not litigated merits of the claim Rule 60 is inapplicable and bankruptcy court has wide discretion).

19

At this stage of the case, when all the pertinent debt and lien documents have been produced, and all the stipulated, relevant facts support an allowed claim on behalf of BOA, either the Debtors or BOA could seek reconsideration of the claim disallowance. Setting aside the claim disallowance order would benefit both the Debtors and BOA. Letting the disallowance of BOA's claim stand while not voiding BOA's lien would mean the Debtors' fresh start would be impaired if not essentially extinguished. At the end of the bankruptcy, the payments the Debtors made into their Chapter 13 plan that they had planned to go to their mortgage would now be paid to unsecured creditors and the debt to BOA would continue to grow, likely causing BOA to foreclose as soon as the bankruptcy is over. In other words, it is in the Debtors' best interest to ensure that BOA has an allowed claim, paid through the plan if the Court cannot justify voiding a lien which is clearly valid "in substance." And setting aside the claim disallowance would get money to BOA – which would normally be a goal that a secured lender would like to achieve.[11] Whether Rule 60 standards apply or whether it is some lesser "equities of the case" standard, the court believes that "cause" for reconsideration of BOA's claim is present under these unique circumstances.

In light of the *Tarnow* decision and how *Dewsnup* has been applied in *Hamlett* and *Be-Mac Transport*, this Court will avoid the parties' invitation to rule more broadly than necessary. Accordingly, the Court will do *sua sponte* what the parties appear too contrary to ask for themselves. It will treat the combination of pleadings and stipulations as a joint request to set

---

[11] If BOA were most interested in getting paid rather than creating legal precedent, it would seek to set aside the order of disallowance. If the Debtors were most interested in avoiding the risk of a failed Chapter 13 plan, they would likewise focus on claim reconsideration rather than lien litigation. The facts have been fully developed through these proceedings to create the equivalent of an amended proof of claim with all the necessary information and documentation.

20

aside the order disallowing the claim and to treat the claim as allowed based on the stipulated material.  And, it will grant that request, thereby rendering moot the complaint to void the lien.

In the interest of not having this Court's decision used as either a sword or a shield in some other case, this ruling is quite limited.  Though this § 501(c), debtor-filed, defective claim scenario may run afoul of *Dewsnup* when used as a basis for invoking § 506(d) lien avoidance in the absence of some substantive attack, it is also clear that this scenario should not arise in a real case or controversy.   Further, while a secured creditor can potentially put its lien at risk by failing to participate in the claims process, again it would seem to be unusual to have an actual scenario where that issue legitimately arises without some good faith attack on the lien validity "in substance." Under these artificial facts, the appropriate result is to set aside the order of disallowance rather than voiding the lien.

### IV. CONCLUSION

Accordingly, this Court's order of October 5, 2011, disallowing the claim of BOA will be set aside.  That action renders the other issues in this case moot.  The Court will enter an appropriate order accordingly.

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.